THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LEON TERRY MASON, Defendant-Appellant.

Fourth District   No. 14413

Opinion filed May 26, 1978.

TRAPP, J., concurring in part and dissenting in part.

Everett L. Laury, of Danville, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert C. Perry, of State's Attorneys Appellate Service Commission, and Gary J. Anderson, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

The defendant before us is a self-admitted liar.

But did he commit perjury as defined by our statute?

We fear not—and we are compelled to reverse.

The facts are not in great issue. On August 21, 1975, David Grinestaff was murdered during a gas station stickup. During the investigation, defendant Leon Mason contacted a Danville officer with information about the crime. Mason testified before a grand jury implicating James Dumas and Dumas was ultimately convicted for the murder, which was affirmed by this court on appeal. *People v. Dumas* (1977), 49 Ill. App. 3d 756, 364 N.E.2d 616.

After Mason's grand jury testimony, a deal between Mason and the local State's Attorney regarding a separate criminal proceeding in another county broke down. The reasons for the break are not so important as the open distrust that arose between the two. Other factors led the prosecutor to believe that Mason would not testify at the Dumas trial as he had before the grand jury. The State received court permission, under the applicable Supreme Court Rules, to take Mason's evidence deposition. During the deposition (at which the accused murderer, James Dumas, was present), Mason testified to events regarding a third person named Dago, a second .38-caliber gun, and a statement to Mason by Dumas which was either at odds with the grand jury testimony, or which Mason later admitted was false or "dirty." The evidence deposition was prepared and filed with the clerk of the court by the court reporter.

Mason was under subpoena in the Dumas trial and did obey the subpoena; however, he was *not called to testify* at trial by either side or as a court's witness. The State called 27 witnesses against Dumas. With Mason present, the evidence *deposition* was naturally inadmissible and was *not offered* to the jury in the Dumas case.

Mason was charged with 11 counts of perjury arising from his sworn evidence deposition. The first 9 counts alleged perjury based on section 32—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 32—2(a)), *i.e.*, that Mason, under oath, made false statements in his evidence deposition (material to the Dumas murder case) which Mason did not believe to be true. The last two counts charged perjury under section 32—2(b), in that Mason allegedly made contradictory statements (the first before a grand jury and the second in the evidence deposition) material to the Dumas murder case. After a bench trial, he was found guilty on all counts.

On appeal, he raises several points, but the lynchpin on this appeal is the *materiality* of the evidence deposition vis-á-vis its influence on the decision maker, be it the Dumas murder trial court and jury or the grand jury.

At early common law, perjury was wilful false assertion under oath intended to mislead the tribunal or jury. (See 60 Am. Jur. 2d *Perjury* §1, at 966 (1972).) Lord Coke is attributed with introducing the concept of materiality into the crime's definition:

> "Perjury is a crime committed, when a lawful oath is ministered by any that hath authority, to any person in any judicial proceeding, who sweareth absolutely, and falsely in a matter material to the issue, or cause in question, by their own act, or by the subordination of others." (Coke, The Third Part of the Institutes of the Laws of England 164 (6th ed. 1680).)

And regarding the element of materiality, Coke wrote:

> "For if it be not material, then even though it be false, yet it is no perjury, because it concerneth not the point in suit, and therefor in effect it is extrajudicial. Also, this Act giveth remedy to the party grieved, and if the deposition be not material, he cannot be grieved thereby." Institutes, at 167.

■■■ There is no question that under our present perjury statute (Ill. Rev. Stat. 1975, ch. 38, par. 32—2), materiality is an element of the crime which presents a question of law for the court to decide. (*People v. Dyer* (1977), 51 Ill. App. 3d 731, 366 N.E.2d 572; *People v. Harris* (1968), 102 Ill. App. 2d 335, 242 N.E.2d 782.) As stated in *Harris*:

> "To convict one of perjury under this statute, the State must not only prove the false statement, but prove that it was material to the issue or point in question. 'A statement can be neither material nor immaterial in itself, but its materiality must be determined in accordance with its relation to some extraneous matter.' [Citation.] Materiality looks to the relationship between *the propositions for which the evidence is offered* and the issues in the case. [Citation.] Therefore the State must prove the falsity of the statement made in the prior proceeding and prove what the issue or point in question in the former proceeding was, so the court can ascertain the materiality of the alleged false statement to the issue or point in question." 102 Ill. App. 3d 335, 337-38, 242 N.E.2d 782, 784. (Emphasis ours.)

Illinois courts have given both broad and narrow scope to the concept of materiality to an issue or point in question. Very early in Illinois legal history, in *Pankey v. People* (1833), 2 Ill. (1 Scam.) 80, it was held that where a point in question was not determinative by the outcome of a case, the point was not material. The "outcome determinative" test of materiality was more recently used in *People v. Glanton* (1975), 33 Ill. App. 3d 124, 146, 338 N.E.2d 30, where the court stated that the testimony must be shown to have been material to the issue tried, and not merely cumulative, but probably to have controlled the result. However,

materiality to the issue in question has been given a broader brush. In *People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239, no mention of whether the false statement need be determinative was made when the court found that, to constitute perjury, the testimony must have been material to defendant's guilt or innocence. In *People v. Beacham* (1977), 50 Ill. App. 3d 695, 365 N.E.2d 737, the court found the test of materiality to be satisfied where the statement was made by a defendant at a grand jury investigation of his possible criminal conduct.

Our supreme court, in *Mackin v. People* (1885), 115 Ill. 312, 3 N.E. 222, stated that any evidence before a grand jury which tended to establish whether or not a crime had been committed was material. The court found it "obvious" that all testimony which tended to disclose whether an offense had been committed was important and material. Later, in *People v. Glenn* (1920), 294 Ill. 333, 128 N.E. 532, the court stated that the testimony of a witness must not only be knowingly false,[1] but also be intended to mislead the court or jury. The view of *Glenn* is in line with the current test of materiality in Federal courts, *i.e.,* whether the false testimony has a natural tendency to influence the trier of fact. *United States v. Rivera* (7th Cir. 1971), 448 F.2d 757.

■■ The crux of the crime of perjury is the use of knowingly false information under oath before a court or jury where the information would or could influence the trier of fact. Of course, perjury can obtain under our statute to situations such as false information under oath in applying for certain State licensed activities, the criminal act being the placing of false information before one who will pass on the application. This court has stated that the purpose of the perjury statute is, in part, to insure the validity of the fact-seeking process. *People v. White* (1973), 16 Ill. App. 3d 158, 305 N.E.2d 743, *rev'd on other grounds* (1974), 59 Ill. 2d 416.

As is obvious from the foregoing discussion, witnesses in trial and before a grand jury proceeding may commit perjury. And can an affidavit, sworn pleading or deposition be the basis of a perjury charge? The answer is in the affirmative. In *Loraitis v. Kukulka* (1953), 1 Ill. 2d 533, 116 N.E.2d 329, the Illinois Supreme Court stated that the perjury statute applies to affidavits as well as testimony. (See also *Amerco Field Office v. Onoforio* (1974), 22 Ill. App. 3d 989, 317 N.E.2d 596.) In *Doyle v. Wiley* (1854), 15 Ill. 576, a deposition was used as a basis for perjury. The offense of perjury was not committed until the false affidavit, etc., was filed. (*Loraitis; Amerco.*) Here, the evidence deposition was filed by the court reporter.

---

[1] The requirement of *knowing falsity* has been supplemented by amendment so that the State may now prove perjury through introduction of inconsistent statements. See Ill. Rev. Stat. 1975, ch. 38, par. 32—2(b).

■■  However, in this case, the filing of Mason's evidence deposition is not dispositive because the deposition was not admissible as evidence and never reached the court or jury; *Loraitis*, *Amerco*, and *Doyle* are distinguishable on this crucial ground. In *Loraitis*, a sworn pleading was filed. In *Amerco*, the false affidavit was attached to a section 72 petition. And in *Doyle*, the deposition was held admissible and read in the trial court. Thus, in all three cases, the trier had before it false testimony under oath attempting to influence his determinations. In this case, however, no influence on the trier of fact in the Dumas murder trial occurred since the evidence deposition was not used at that trial. In fact, since Mason appeared at the Dumas trial pursuant to State subpoena, the evidence deposition would have been totally inadmissible (unless used for impeachment purposes). No case of perjury is proved where the false or contradictory statement or affidavit under oath is not properly before a decision maker (be it grand jury, judge, or jury). Under even the narrowest definition of materiality to the issues of guilt and innocence in the Dumas trial, many of the first nine counts of perjury would be sustainable but for the fact that these lies were incapable of influencing the Dumas jury since the deposition was not read to them. As to the last two counts, based on inconsistent statements, the same reasoning applies. Had the evidence deposition been put before the jury or the grand jury, perjury would have occurred.

At oral argument, the State argued that the reason Mason wasn't called to testify at the Dumas trial centered around the unreliability of exactly what he would say. The decision whether or not to call Mason was one of prosecutorial discretion—that of balancing Mason's reliability against the value his testimony of Dumas' confession would have. Who knows? Perhaps Mason would have testified *contrary* to his false deposition had he been called to the stand. It was the prosecutor's gamble. In any event, the jury was, by the prosecutor's determination, not exposed to Mason's sworn live testimony, whatever it would have been. The State admits the evidence deposition was not used but seeks to sustain the conviction on the basis that the deposition was *relevant* to the ongoing murder prosecution. No Illinois case found has adopted the position that perjury was committed in a judicial proceeding without the trier being in a position to be influenced by the sworn testimony; in light of *Loraitis* and *Amerco*, we decline to extend the limit of criminal liability.

The distinction we draw here is a fine one, but certainly one of great importance. The quoted passage of *Harris* carries with it the unspoken assumption that the false testimony was part of the prior evidence before the trier of fact. And without the possibility of influencing the trier, no perjury occurred.

■■  We realize that Illinois courts have accepted the Federal view

regarding certain aspects of the crime of perjury (see *People v. Guppy* (1975), 30 Ill. App. 3d 489, 333 N.E.2d 576). We also recognize that the United States Supreme Court, through Mr. Justice Brandeis, has indicated that, under a Federal statute, the crime of perjury is complete when the oath is taken with the necessary intent, even though the false affidavit is never used. (*United States v. Noveck* (1927), 273 U.S. 202, 71 L. Ed. 610, 47 S. Ct. 341; see also *Hale v. United States* (10th Cir. 1969), 406 F.2d 476, *cert. denied* (1969), 395 U.S. 977, 23 L. Ed. 2d 765, 89 S. Ct. 2129.) However, since the Illinois courts have required not only a filing, but, as we believe, *use* of the sworn statement before a trier, under the particular facts herein we do not choose to follow the Federal rule.

■■ Here, the element of materiality was not proved because the trier was not exposed to the sworn lies. Hence, no perjury occurred. This decision neither diminishes the magnitude of Mason's lies in the evidence deposition, nor his seemingly inborn disregard of the truth. However, we must reverse. Had Mason testified at the Dumas trial, we undoubtedly would be affirming many, if not all, of the individual convictions before us today. And, from a review of Dumas' appeal, we cannot understand the State's failure to cement Mason's perjury before the Dumas jury by calling him to the stand.

We are mandated to set aside the convictions below.

Reversed.

CRAVEN, J., concurs.

Mr. JUSTICE TRAPP, concurring in part and dissenting in part:

I concur in the opinion as it disposes of the counts charging perjury under section 32—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 32—2(a)). I dissent as to the disposition of the two counts charging perjury as provided in section 32—2(b).

Defendant testified under oath before a grand jury upon matters material to the consideration of that body. Thereafter in a proceeding authorized by the circuit court he testified under oath upon the same matters. It is agreed that the testimony as to such matters was contradictory.

Within the terms of section 32—2(b) the prosecution is not required to prove which "statement is false," or as stated in section 32—2(a), the prosecution is not required to prove which of the statements "he does not believe to be true." Such statutory provision is constitutional. *People v. Ricker* (1970), 45 Ill. 2d 562, 262 N.E.2d 456.

In *Ricker*, the court stated that by definition each of the contradictory statements cannot be true and that the effect of the statute is to place upon

the defendant a burden of going forward with the evidence to show whether or not the conflict in the contradictory statements arose because of excusable mistake or some other valid reason. This the defendant did not undertake to do. In the absence of such explanation, it may be concluded that the testimony before the grand jury was false. See *People v. Mitchell* (1976), 44 Ill. App. 3d 399, 357 N.E.2d 862.

I would affirm the convictions upon the counts alleging perjury under section 32—2(b).